EGON BRUNO ZUPP *v.* STATE OF INDIANA.

[No. 1269S299. Filed June 7, 1972.]

*William F. Marshall,* of Columbus, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of Kidnapping, Rape, and Commission of a Crime While Armed with a Deadly Weapon. He was sentenced to concurrent terms of imprisonment for life, two to twenty-one years and ten years.

His appeal to this Court presents five issues. The evidence reflected by the record, viewed most favorably to the State, discloses that the defendant forced his way into the automobile of the prosecuting witness at gun point and under threat of death. She was then ordered to drive to a secluded rural spot, where he forced her to have sexual intercourse with him. The entire episode took place between the hours of approximately 9:00 p.m. and 12:00 midnight. Earlier in the evening, the defendant had been at the residence of Mr. and Mrs. Ziegler, who were the parents of his concubine, Bonnie. Defendant and Bonnie had previously been living together in Muncie but had become estranged and Bonnie had gone to the home of her parents in Columbus. Defendant was there to affect a reconciliation. He had left the Ziegler home at approximately 6:00 p.m. to purchase cigarettes, and when he failed to return as expected, Mr. and Mrs. Ziegler became concerned and went to look for him. During the search, Mr.

Ziegler saw an automobile which he thought to be the defendant's, parked at the lot where the prosecuting witness had first been accosted by the defendant. Defendant returned to the Ziegler home at approximately 12:30 a.m. and said that he had been drinking and "bar-hopping" in Columbus. The following day the Zieglers read a newspaper account of the rape. The reported description of the rapist, as given to the police by the prosecuting witness, matched that of the defendant. They became suspicious and reported the same to the Columbus police, who procured the arrest warrant. In the meantime, Defendant had returned to Muncie. This information was relayed by the Columbus police to the Muncie police, who arrested the defendant. Following the arrest, the police properly advised the defendant of his constitutional rights concerning his restraint, and asked for and received permission to search his automobile and his living quarters. It is commendable that the police, at this stage, received from the defendant a voluntary written waiver and consent to the search, reciting that he was informed of his 4th Amendment rights to refuse a search and of his right to have no search conducted without a warrant. In recent years this Court has been compelled to overturn many trial court judgments, and doubtlessly much pertinent and otherwise competent evidence has been refused by our trial courts, because of questions surrounding police searches that could have been thusly avoided. We wholeheartedly endorse the police procedure employed herein in this regard.

1. Defendant's first contention is that the warrant upon which he was arrested was issued without a showing of probable cause and that certain evidence thereby obtained should not have been admitted into evidence. Conceding the invalidity of the arrest warrant, the evidence referred to was obtained in the searches made under the aforesaid waiver and consent; and we find no merit to the defendant's claim that such consent was coerced. The illegality of the arrest, therefore, does not bear upon the admissibility

of the evidence. *Layton* v. *State* (1968), 251 Ind. 205, 240 N. E. 2d 489; *Wells* v. *State* (1971), 256 Ind. 161, 267 N. E. 2d 371.

2. The introduction of a gun into evidence was objected to by the defendant. This gun had not been obtained under the aforementioned consent of search but had been taken from a sleeping room not a part of his regular living quarters but sometimes used by the defendant and was admittedly outside the scope of the aforementioned consent. The gun in question had been given to the police by a Mr. Forhan from whom the defendant rented the sleeping room. There was evidence that he had, on past occasions, acted as a police informer; and it is the defendant's contention that he had thereby established himself as a police agent and, as such, could not conduct a search and have the evidence thereby obtained utilized in evidence. There is no evidence that Mr. Forhan was in the regular employ of the police or was, on this occasion, employed or authorized to make the search. Assuming, then, that his act of entering the sleeping room and taking the defendant's gun therefrom was unauthorized, nevertheless, in so doing he was merely acting as a private citizen. The constitutional proscriptions against unreasonable searches and seizures are intended only to protect against such actions by the government, and neither the state nor federal provisions apply to the unauthorized acts of private individuals. 79 CJS *Searches and Seizures* § 5(c) and cases there cited; *Gunter* v. *State* (1971), 257 Ind. 524, 275 N. E. 2d 810; *Burdeau* v. *McDowell* (1921), 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048.

3. After the defendant had been incarcerated in Muncie, the prosecuting witness was brought from Columbus and viewed and identified him in his jail cell. This was a clear violation of *United States* v. *Wade* (1967), 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149. However, defendant did not object when the identification testimony was introduced at the trial. It is a principle of long

standing that to be available on review, the error must have been timely presented at the trial stages. *Johnson* v. *State* (1972), 257 Ind. 682, 278 N. E. 2d 577; *Wilson* v. *State* (1970), 253 Ind. 585, 255 N. E. 2d 817. Defendant acknowledges that he cannot avoid the foregoing as being procedurally correct but insists that the application of the rule in this case would deny him a fair trial, in that an objection to the in-court identification would have precluded him from presenting other facts to the jury that bore upon his innocence. Defendant has failed to make clear to us just how this set of circumstances would have operated to produce such a result, but regardless, we do not agree that the established and proven rules of procedure can be varied on a case-to-case basis to accommodate the particular litigant's trial plan. Almost without exception, the most careful and skillful of lawyers, during the course of a jury trial, is faced with frustrating decisions of techniques and must balance the advantages of insisting upon strict compliance with various rules of evidence against the disadvantages thereof. Invariably a review of the record reveals numerous waivers, but many of these may have been well calculated to produce a favorable result. It may well be one of the drawbacks inherent in our adversary system, but we know of no way to permit the litigant to elect between options without holding him to his decision.

4. Defendant has presented us with a question concerning the admissibility into evidence of his gun upon the basis that an adequate chain of custody had not been previously established as required by *Graham* v. *State* (1970), 253 Ind. 525, 255 N. E. 2d 652. It is his position that the burden was upon the State to prove the chain of custody of the weapon from the time it came into the possession of Mr. Forhan. This presupposes Mr. Forhan to have been an agent of the police, however, and since we have previously determined that there was no evidence to that affect, the State cannot be charged with the responsibility of accounting for the custody of the exhibit while in his possession. The *Graham*

case, *supra,* only requires the chain of custody to be shown for the period commencing with the time the evidence came into the State's possession.

5. During the investigative proceedings, the prosecuting witness had submitted to a lie detector test. Thereafter, the defendant filed a motion to require the State to produce the results of it, which motion was denied. Defendant has also assigned this ruling as error, but we do not agree. In support of his contention, he relies upon *Ballard* v. *Superior Court* (1965), 44 Calif. Rptr. 291. This case was a proceeding in mandate and prohibition before the District Court of Appeals for the Fourth District of California. Among other things the action sought to mandate the trial court to allow discovery of the results of a lie detector test given to the prosecutrix in a rape case. As the appellant states in his brief, the District Court held that such results were discoverable. Defendant has failed, however, to provide us with the final episode in the *Ballard* case, which occurred in 1966 and appears in 64 Calif. 2d 159, 49 Calif. Rptr. 302, 410 P. 2d 838. The Supreme Court of California discharged the writ issued by the Fourth District Court; and in upholding the trial court's action, said:

> "The trial court correctly denied defendant's request for the results of the polygraph examination. Defense counsel failed to offer any tenable reason to the trial court why he should be given the results; moreover we cannot conceive of their pertinence to defendant's case. Not only is evidence of polygraph tests inadmissible, but the results of the test would neither lead to any additional evidence nor aid petitioner in preparation for trial. * * * Accordingly, we will not upset the trial court's disposition of this request." 64 C. 2d at 170-71.

We believe the rationale of the California Court is applicable to the case at bar, i.e., that not only are the results of a lie detector test inadmissible, (see annotation in 23 ALR 2d 1306) but that the results of the test would neither lead to any additional evidence nor aid the appellant in the prep-

aration of his defense. Our leadership in the area of discovery in criminal cases in no way indicates that we would extend it into areas that would be unlikely to produce worthwhile results. *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N. E. 2d 873; *Johns* v. *State* (1968), 251 Ind. 172, 240 N. E. 2d 60; *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536.

Finding no error, the judgment of the trial court is affirmed.

Arterburn, C. J. and Givan, J., concur, DeBruler, J., concurs with opinion; Hunter, J., concurs in result.

## CONCURRING OPINION

DeBruler, J.—I concur with the majority opinion, however, I disagree with its disposition of the trial court's action in denying the appellant access to the answers given by the prosecuting witness during a lie detector test. The appellant's pre-trial motion argued that he had the right "to have his counsel and himself have access to such lie detector test and hear what said [witness] stated regarding the alleged crime." The majority opinion indicates that since the result of such a test would be inadmissible, and since in their opinion the results would not aid the appellant in the preparation of his defense, that the denial of the pre-trial motion was required. In my opinion, since this trial occurred prior to our decision in *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N. E. 2d 873, the trial court did not err in overruling the pre-trial motion for discovery. However, I disagree that the granting of such a motion would be error on the reasoning of the majority.

These pre-trial statements by the State's key witness certainly fulfill the tests laid down previously by this Court when we stated that the trial court should grant discovery where (1) there is a sufficient designation of the items sought to be discovered, (2) where the items sought are material to the defense in that it might be beneficial to the appellant's case, and (3) where the State has made no showing of a paramount interest in non-disclosure. *Dillard* v. *State* (1971), 257 Ind.

282, 274 N. E. 2d 387. The admissibility of the results of such a test at the trial is not a proper criterion to use in passing on this pre-trial motion. The answers given during such a test, in my opinion, should be treated in the same manner as any other pre-trial statement, and the trial court does not have the power to grant such a pre-trial motion when the tests outlined in *Dillard, supra,* are fulfilled.

NOTE.—Reported in 283 N. E. 2d 540.