PATRICK SIBLISK *v*. STATE OF INDIANA.

[No. 1074S207. Filed November 7, 1975. Rehearing denied January 16, 1976.]

*Stephen J. Cuthbert,* Tippecanoe Public Defender, of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Patrick Siblisk, was convicted on April 22, 1974, of the first degree murder of one Kenneth Woods. Evidence at trial revealed that Woods and the Appellant had shared an apartment in Lafayette, Indiana. In the early morning hours of Monday, October 25, 1973, the two men quarreled at their apartment. The Appellant ordered Woods to leave. When Woods refused and instead reclined on the floor, the Appellant shot him in the head with a shotgun.

An indictment charging the Appellant with first degree murder was filed on December 12, 1973. The Appellant was arraigned on January 10, 1974, at which time he entered a plea of not guilty by reason of insanity. The trial court ap-

pointed two psychiatrists to examine the Appellant. Trial by jury commenced on April 17, 1974, and on April 22, 1974, the jury returned its verdict of guilty. Sentenced on May 8, 1974, to life imprisonment, the Appellant filed his Motion to Correct Errors on July 8, 1974. This motion was denied on July 29, 1974, and the Appellant thus now presents this appeal.

## I.

The Appellant's first claim of error concerns the trial court's Preliminary Instructions 1 and 4. Preliminary Instruction No. 1 set out verbatim the grand jury indictment of Appellant.

Preliminary Instruction No. 4 reads:

"The indictment in this case is, of itself, a mere accusation and charge against the defendant, and is not of itself any evidence of guilt of the defendant. No juror in this case should permit himself to be influenced against the defendant to any extent, because or on account of the indictment in this cause."

The Appellant maintains that Preliminary Instruction No. 1 is confusing and apt to mislead the jury because it presents a prejudicial implication of guilt: that "good and lawful" grand jurors, "duly and legally impaneled, charged and sworn," concluded "on their oaths" that the defendant was guilty. It is contended that Preliminary Instruction No. 4 does not sufficiently contradict this implication.

We find no merit in these contentions. Any charge by affidavit or indictment brings with it the knowledge that, obviously, *someone* thought the defendant sufficiently guilty to stand trial. The formal language of the indictment in this case is no more damaging than a simple statement that the defendant was indicted by a duly constituted grand jury. Preliminary Instruction No. 4 gives a correct statement of the law. We find no error.

## II.

Prosecution witness Terry Croy was asked on direct examination about a conversation with the Appellant. When he

replied that he did not have the faintest idea of what was said, the prosecution embarked on a series of allegedly leading questions to refresh his memory. The Appellant's objections that the questions were leading were repeatedly overruled and the Appellant finds reversible error in these rulings.

The particular questions cited by the Appellant as objectionable are contained in the following dialogue:

"Q And what did you say and what did he say at that particular time?

A. I don't have the faintest idea. You know, 'Hi. How are you? How's it going?' you know.

Q Okay. Did he make any statements to you about going to Arizona?

\* \* \*

A Yeah. I—I think he mentioned to me that he'd like to go to Arizona, you know. He wanted to leave Lafayette, you know. People're always talking about leaving if you've been anywhere else.

\* \* \*

Q Did he want to take your little boy with him and you to Arizona?

\* \* \*

A Then he said we could take my little boy with us, you know.

Q And what about your wife?

A We just didn't make any mention of it, you know.

\* \* \*

Q Was there ex—was there any mention made by Mr. Siblisk during this conversation that he was going to kill anybody?

\* \* \*

A I was under the impression that that's what he had in mind when he told me that he had some things to take care of, yeah.

Q So —

A But he never said 'I'm going to kill somebody first', you know.

\* \* \*

Q Did Mr. Siblisk indicate to you the number of people that he was going to kill?

A Three.

        *   *   *

Q Did he gi— did he give you any indication as to the identity of these three individuals?

A Yes.

Q What did he tell you?

A He told me that he had a score to settle with somebody and he was going to do me a favor and one of them would be a surprise.

        *   *   *"

We find no impropriety in the method of questioning. Whether a leading question is to be allowed is largely a matter of trial court discretion. Reversible error will be found only upon a showing of abuse of that discretion. *Shipman* v. *State,* (1962) 243 Ind. 245, 183 N.E.2d 823, *cert. denied* 371 U.S. 958, 9 L.Ed.2d 504, 83 S.Ct. 515 (1963); 30 I.L.E. *Witnesses* § 90 (1960). "Questions intended in good faith, to refresh the memory of a witness by directing his attention to persons and occurrences, are competent even where the witness is friendly to the party examining him." *Conway* v. *State,* (1889) 118 Ind. 482 at 487, 21 N.E. 285 at 286. Leading questions may be put to a hostile witness. *Rogers* v. *State,* (1974) 262 Ind. 315, 315 N.E.2d 707.

The prosecution had interviewed this witness prior to trial. His initial lapse of memory surprised counsel for the State and evidenced at least faulty recollection and at most hostility. The trial court did not abuse its discretion in permitting the questions asked here.

### III.

The Appellant's third contention centers around two prosecution rebuttal witnesses, Clara Calloway and Dennis Crouch. Called to the stand to establish the chain of custody of a blood sample taken from the deceased, neither of these witnesses was included in the list of witnesses given to counsel for the Ap-

pellant under pre-trial discovery. The Appellant objected to the admission of the testimony of these witnesses and asked that he be able to depose them. The Appellant cites as error the overruling of this objection and the subsequent admission into evidence of this testimony.

Unless the State makes a showing of paramount interest in nondisclosure, a defendant's request for a list of witnesses should be granted. *Morris* v. *State,* (1975) 263 Ind. 370, 332 N.E.2d 90; *Bernard* v. *State,* (1967) 248 Ind. 688, 230 N.E.2d 536. When witnesses are not included by the State on such a list (here, presumably because they were rebuttal witnesses and their testimony was not anticipated by the State) the normal procedure is to amend the witness list. The defendant's proper remedy is to then move for a continuance because of surprise and failure to do so may waive any alleged error. *Luckett* v. *State,* (1972) 259 Ind. 174, 284 N.E.2d 738.

In this instance, we do not see that the Appellant was harmed by the admission of testimony without a preceding deposition by the Appellant. There is no showing of surprise. These witnesses were rebuttal witnesses—the State's case did not primarily rely on them. We do not see that the trial court erred in admitting this testimony over the Appellant's objection.

## IV.

The Appellant's final contention of error is that the evidence presented at trial was insufficient to support the jury's verdict that the Appellant was sane at the time of the murder in question. We can find no merit in this contention.

This court, in reviewing a verdict as unsupported by sufficient evidence, will not weigh the evidence or resolve questions concerning the credibility of witnesses. Rather, the court will look to the evidence most favorable to the State and reasonable inferences to be drawn from that evidence. A conviction will be upheld if there is sub-

stantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686 and cases cited therein.

The jury in this case was presented with evidence sufficient to support its verdict that the Appellant was sane. Two Court-appointed psychiatrists concluded that he was sane at the time of the crime. Lay testimony established that the Appellant fled the scene of the crime in an orderly fashion in the car of the deceased. He removed the murder weapon from the scene of the crime and sought funds to aid his flight. The Appellant points to the testimony of a third psychiatrist which concluded that the Appellant was not sane and the testimony of the two other psychiatrists which was "replete with discription (sic) of defendant's addiction and the affect (sic) on his inadequate personality caused by the use of drugs." This asks us to weigh evidence, which we cannot do.

Finding no error, we affirm the judgment of the trial court.

All Justices concur.

NOTE.—Reported at 336 N.E.2d 650.