James GENTRY, Appellant,

v.

STATE of Indiana, Appellee.

No. 283S68.

Supreme Court of Indiana.

Nov. 29, 1984.

⚙⊷531(3)

Ronald K. Smith, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from convictions of rape, a class A felony, Ind.Code § 35–42–4–1, and burglary, a class B felony, Ind.Code § 35–43–2–1. Appellant filed a notice of defense of insanity. The case

was tried by the court. The finding was guilty but mentally ill. Appellant was sentenced to a term of thirty years for rape and ten years, to run concurrently, for burglary.

Appellant raises seven issues on appeal: (1) whether it was error to allow the victim's in court identification of appellant; (2) whether appellant's first statement to the police was the result of an illegal detention; (3) whether he made a voluntary and intelligent waiver of his rights prior to making his first statement to the police; (4) whether the police interrogation should have ceased after he requested an attorney; (5) whether it was error to permit the trial prosecutor to ask a leading question concerning the location of the crime; (6) whether it was error to allow into evidence State's exhibits Q, R and S; (7) whether the trial court's finding of guilty but mentally ill was contrary to law.

Facts tending to support the determination of guilty and material to some suppression issues include the following.

On July 1, 1981, J.S., the alleged victim, was in the process of moving into an apartment in Muncie, Indiana. About 10:00 p.m. that evening she heard the doorbell and went to the door. A man at the door asked if Bobby Wallen lived in the apartment. She answered no and the man left. She then finished unpacking and closed all the windows in the apartment. Afterwards, she took a bath and left the bathroom window open a few inches. She then laid on the couch to read but fell asleep.

Meanwhile, a man climbed up a tree and entered the apartment through the bathroom window. The man awakened the victim by placing a pillow over her face and a knife at her throat, and forced her to engage in sexual intercourse in the living room and then forced her to engage in sexual intercourse in the bedroom. He then tied her to the bed using her own belt and gagged her. Then, he went through her purse and drawers, threatened to kill her if she told anyone, and then left.

During the incident, he wore one of the victim's stockings on one hand and a pair of the victim's panty hose on the other hand. He also wore a bandanna to cover his face, but he took it off half way through the incident, and the victim saw his face.

The victim eventually freed herself and subsequently called the police and went to the hospital for tests.

On July 7, 1981, the victim was interviewed by detectives, and she selected appellant's photograph from a photographic array as the one most closely resembling her assailant. Later the same day, she was hypnotized by the police and provided a composite sketch of her assailant. On July 9, 1981, appellant was advised of his rights, and he signed a rights waiver form. In the first statement, appellant confessed to the crime in the presence of Detectives Anthony Mench and Mike Kelso. Then, appellant requested an attorney. After realizing that the tape recorder was not working properly during the first statement, the Detectives took a second statement from the appellant in which he told them that he was in the apartment; however, he denied raping her. On July 13, 1981, the victim picked the appellant out of a physical lineup at the Delaware County Jail. The victim also identified the appellant at trial.

I

Appellant contends that the admission, over his objection, of the victim's in-court identification testimony was error because it was allegedly the result of a hypnotic session the victim had with the police on July 8, 1981.

Appellant moved to suppress any identification of him to the police by the victim. A hearing was held on the matter, and the trial court ruled that the evidence of identification gained as a result of the hypnotic session was inadmissible; however, the trial court ruled that there was a sufficient independent basis for the in-court identification testimony of the victim.

In *Love v. State*, (1977) 266 Ind. 577, 580, 581, 365 N.E.2d 771, 773, this Court noted

the appropriate method of analysis in this type of case:

"A witness who has been subjected to an unnecessarily suggestive confrontation with the accused may nonetheless identify the accused at trial as the perpetrator of the offense if the pre-trial confrontation has not created a 'very substantial likelihood of irreparable misidentification,' *Norris v. State*, (1976) 265 Ind. 508, 356 N.E.2d 204, or in other words, if the witness has a basis for his in-court identification independent of the suggestive procedure. *Johnson v. State*, (1977) 265 Ind. 689, 359 N.E.2d 525. The factors considered in determining the existence of an independent basis have been set out in several cases, and may be divided into two sets: those dealing with the witness' opportunity to observe the offender, and those relating to the reliability of his recollection of his original observation of the offender. Specific factors in the first group; were enumerated in *Parker v. State*, (1976) 265 Ind. 595, 599, 358 N.E.2d 110, 112:

The facts of paramount importance to this question relate to the opportunity of the witness to view the offender at the time of the offense; the duration for which the witness can observe the perpetrator; the distance between them; the lighting conditions; and circumstances affecting the amount of attention the witness can devote to observing the guilty party.

See also *Dillard v. State*, (1971) 257 Ind. 282, 298, 274 N.E.2d 387, 389.

Factors in the second group were described in *Swope v. State*, (1975) 263 Ind. 148, 157, 325 N.E.2d 193, 197, quoting *United States v. Wade*, (1967) 388 U.S. 218, 214, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149, 1165;

The prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-line-up description and the defendant's actual description, any identification prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup

identification. It is also relevant to consider those facts which despite the absence of counsel, are disclosed concerning the conduct of the lineup.

The State bears the burden in the trial court of producing 'clear and convincing evidence' of an independent basis, *Swope v. State*, supra, at 325 N.E.2d 197, but in reviewing the lower court's finding we do not reweigh the evidence, but look to the evidence most favorable to the trial court and any uncontradicted evidence favorable to the appellant. We accept the trial court's finding if it is supported by sufficient evidence. *Whitt v. State*, (1977) 266 Ind. 211, 361 N.E.2d 913."

■ The evidence bearing on the first group of factors reveals that the victim saw the appellant at the front door under good lighting. The victim stated that during the crime she was only three to four inches from the appellant and that the lighting in her apartment was sufficient for her to see the appellant's face. The victim was able to observe the appellant for the duration of the two acts of forcible sexual intercourse.

The evidence bearing on the second group of factors reveals that, within a day or two after the crime, the victim provided the police with a description of her assailant. She described the man as "... a young, slim, black male, about five-seven to five-eight, one hundred and forty pounds." Subsequently, the victim was shown a photographic array of eight pictures, and she selected the appellant's photograph and one other photograph. At trial, she testified that, when she selected appellant's photograph, she told the police that it looked just like her assailant. Also, she testified that she selected the other photograph only because his long face was similar to the type of face her assailant had. After the photographic array, the victim was hypnotized by the police in order to quiet her emotional problems concerning the rape and in order to help in the police investigation of the case. During the hypnotic session, a composite sketch was

made, and she was shown a second array of photographs. Following the hypnotic session, the victim observed a physical line-up, and she selected the appellant. Furthermore, while hypnosis was employed in order to facilitate the subsequent identification procedure, she never mis-identified another person, and did, in fact, identify appellant from a photo-array before the hypnotic trance and physical line-up were administered to her. Therefore, we believe there was sufficient evidence to support the trial court's finding that the victim's in-court identification of appellant had a basis independent from the suggestive pretrial procedures. *Morgan v. State*, (1980) 272 Ind. 504, 400 N.E.2d 111.

## II

Appellant argues that the police lacked probable cause to arrest him, and therefore, his statement to police is inadmissible because it was the result of an illegal detention.

■ All that is necessary to establish probable cause are facts and circumstances "... which would warrant a man of reasonable caution to believe the defendant has committed the criminal act in question." *Funk v. State*, (1981) Ind., 427 N.E.2d 1081, 1085.

■ The victim's selection of appellant's photograph at the first photograph array and the victim's identification of the appellant during hypnosis provided a sufficient basis for establishing probable cause. Although information obtained during hypnosis is not always admissible at trial, such information may suffice to establish probable cause for an arrest or a detention for questioning. Experts generally agree that hypnosis is a reliable investigative tool which can be used to provide valuable leads for investigation. Unlike the fact finders in the courtroom, the investigator does not need to make subjective evaluations of the truth or falsity of the hypnotic recall but only uses the leads he obtains for the purpose of subsequent investigation and verification. *Pearson v. State*, (1982) Ind., 441 N.E.2d 468, 471.

The appellant's detention was supported by probable cause and was lawful.

## III

Appellant argues that he did not make a voluntary and intelligent waiver of his rights before making his first statement to the police.

■ It is the State's burden to prove, beyond a reasonable doubt, that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was voluntarily given. *Shepler v. State*, (1980) Ind., 412 N.E.2d 62; *Jackson v. State*, (1980) 274 Ind. 297, 411 N.E.2d 609. Upon a review of the denial of a motion to suppress a confession and the subsequent admission of that confession over objection, this Court will not weigh the evidence or judge the credibility of witnesses. The admissibility of a confession ultimately depends upon questions of fact which are to be resolved by the trial court. The ruling that a statement given by the accused during custody and interrogation is admissible will be affirmed where there is substantial evidence of probative value from which a rational trier of fact could infer beyond a reasonable doubt that the required free, voluntary and knowing action on the part of the accused took place. *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811.

At the hearing on the motion to suppress, Officer Mench testified that the appellant was read *Miranda* rights and that it was explained to appellant why he was being questioned. Before the questioning commenced, appellant signed the waiver of rights form. The waiver of rights form was read aloud to appellant, and he indicated that he could read some; consequently, he read parts of the form. Also, appellant indicated to the officers that he understood his rights. Moreover, when cross-examined at the motion to suppress hearing, appellant confirmed that the police read his rights to him, and he stated that at the time of the interview he knew he had a right to an attorney. At trial, appellant

objected to the admission of his first statement.

Appellant points to evidence tending to establish that he suffered from epilepsy and had not taken medicine required for the condition, that he had received medical treatment for his mental condition, that he had the mind of a five year old and was confused and crying.

The existence of the epileptic condition and the medical treatment is not contradicted; however, there is no necessary inference here that it would erode the will or the capacity to appreciate the consequences of waiver. The studies of appellant's behavior and conditions produced conflicting results. The confusion and crying referred to came after the waiver decision was made, when appellant was going over the particulars of the assault and was admittedly scared. On the whole, this evidence pointed out by appellant weighed against the prosecution, but it does not decisively undermine the trial court's decision.

■ We find that the evidence sufficiently supported the inference of a free, voluntary, and intelligent waiver of rights before the first statement was made to the police. It was not error to permit the introduction of this first statement into the evidence.

### IV

Appellant argues that all questioning should have ceased after he requested an attorney. Appellant gave an incriminating statement to police; however, after the statement was completed, it was determined that the tape recorder had not functioned properly. After this statement, appellant requested an attorney for the first time. Police, then, took a second statement from the appellant which was recorded. The trial court ruled on the motion to suppress that the second statement was inadmissible because it was taken after appellant had requested an attorney. Consequently, appellant presents nothing for review because the trial court determined the issue in his favor.

### V

■ Appellant argues that the trial court erred in permitting the prosecution to ask a leading question concerning the location of the crime. Allowing a leading question is primarily left up to the Judge conducting the trial. On appeal, an abuse of discretion must be demonstrated. To constitute reversible error, the appellant must also show a substantial injury by the answer to the leading question. *Hedges v. State*, (1982) Ind., 443 N.E.2d 62, 66.

■ The series of questions concerning where the victim resided at the time of the crime is as follows:

Q. Did you use to live in Muncie?

A. Yes sir.

Q. And around the 1st of July, 1981, did you live in Muncie then?

A. Yes sir.

Q. And where did you live?

A. I don't remember the exact address. But it's right off Madison Street across from the Y.W.C.A.

Q. Was it 315½ Charles Street?

Ronald Smith: To which I would object, your Honor. Counsel is leading his witness and that is an essential element of the case. Move the answer be stricken. She already stated she doesn't remember.

THE COURT: Sustained. It is stricken.

Q. Jenice, if you heard your address, would you remember?

A. Yes sir.

Q. Would that refresh your memory?

A. Yes sir. It was kind of hard to remember, because I only lived there for one day.

Q. And was that 315½ East Charles Street?

Ronald Smith: Again, your Honor, I would object. Counsel is still leading his witness and he's not laid a proper foundation for trying to refresh her memory.

THE COURT: Overruled. She may answer the question.

Q. Do you want me to restate the question again.

A. Please.

Q. Four the purpose of refreshing your memory, did you in fact, live at 315½ East Charles Street, Muncie, Indiana?

A. Yes sir.

Questions such as these are intended in good faith to refresh the memory of a witness by directing his attention to persons and occurrences, and are competent even where the witness is friendly to the party examining him. *Bell v. State,* (1977) 267 Ind. 1, 366 N.E.2d 1156, at 1158. *Accord Norton v. State,* (1980) 273 Ind. 635, 408 N.E.2d 514, 527; *Siblisk v. State,* (1975) 263 Ind. 651, 336 N.E.2d 650, 652.

Furthermore, appellant has not shown a substantial injury by the victim's answer to the State's question. The victim had identified the apartment in the State's photographic exhibits. As a result, there was no doubt as to the place of the crime. The trial court did not err in permitting the leading questions concerning the location of the crime.

## VI

Appellant argues that the trial court erred in admitting, over objection, State's exhibits Q, R, and S into evidence because the prosecutor allegedly did not lay a proper foundation connecting the exhibits to the crime or the accused.

The law in Indiana is that evidence is relevant if it has a tendency to prove a material fact. *Jones v. State,* (1981) Ind., 425 N.E.2d 128, 131; *Lock v. State,* (1980) 273 Ind. 315, 403 N.E.2d 1360, 1367. The trial court has wide discretion in ruling on the relevance of evidence. *White v. State,* (1981) Ind., 425 N.E.2d 95, 97; *Turpin v. State,* (1980) [272] Ind. [629] 400 N.E.2d 1119, 1122. Furthermore, any evidence tending to connect an accused with the commission of a crime is admissible. *Wilson v. State,* (1978) 268 Ind. 112, 116, 374 N.E.2d 45, 47; *Pullins v. State,* (1970) 253 Ind. 644, 647, 256 N.E.2d 553, 555. Positive proof of authentication of evidence with such a tendency is not required for admissibility. "Lack of positive proof or positive authentication only reflects on the weight of evidence and the inferences drawn therefrom by the trier of fact." *Wilson, supra.*

*Goodloe v. State,* (1982) Ind., 442 N.E.2d 346, at 347.

State's exhibit Q was identified by the victim as her belt, and she identified it as the belt appellant had used to tie her to the bed. State's exhibit R was identified by the victim as her pink robe, and she testified that appellant had worn the robe when he attacked her. State's exhibit S was an item of physical evidence, a leg of a pair of panty hose, found in the victim's apartment and pointed out to Officer Mench by the victim. The victim testified that appellant placed one of her socks over one hand and cut one of the legs off of her pantyhose and placed that over the other hand.

▮ The evidence presented at trial was sufficient to establish the relevance of exhibits Q, R, and S and their connection to the crime and appellant. The ruling on the objection was correct.

## VII

Appellant argues that the evidence presented at his trial demonstrated that he was not responsible by reason of insanity; therefore, the trial court's verdict is contrary to law. Appellant interposed an insanity defense. Trial was to the court, and the trial Judge found appellant guilty but mentally ill.

▮ Ind.Code § 35–41–4–1(b) sets out appellant's burden of proof on this issue. "Notwithstanding subsection (a), the burden of proof is on the defendant to establish the defense of insanity (IC 35–41–3–6) by a preponderance of the evidence." On this point, the appeal is from a negative judgment. In determining whether a negative finding is contrary to law, this Court neither weighs the evidence nor resolves questions of credibility of witnesses. From this viewpoint, we consider only whether

the evidence is without conflict, and leads to but one conclusion. Only where such a single conclusion is supported and is opposite to the one reached by the trial court, will the decision below fall as being contrary to law. *Thomas v. State*, (1981) Ind., 420 N.E.2d 1216 and *Price v. State*, (1980) 274 Ind. 479, 412 N.E.2d 783.

The evidence presented included two psychiatric reports. The conclusion reached in one was consistent only with a finding of legal insanity at the time of the offense on July 1, 1981. The conclusion reached in the other was that appellant met the standards for legal sanity at the time of his examination which took place on August 11, 1981, but that this same conclusion might not have been reported for the time of the offense. The tendency of this latter report to support the conclusion of legal sanity was congruent with inferences arising from the description of appellant's conduct at the time of the alleged assault, which included efforts throughout focused upon his illicit goal and calculated behavior to avoid later identification. Lay testimony of this sort may be considered together with expert testimony when determining whether to hold a person responsible for his or her acts. See *Mayes v. State*, (1982) Ind., 440 N.E.2d 678. The evidence presented at trial bearing upon the issue was in conflict and did not lead inalterably to a conclusion that appellant was not responsible by reason of insanity. The judgment will not be disturbed on this basis.

The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.