## OTTGEN v GAREY

Ohio Appeals, 6th Dist, Lucas Co

No 2643. Decided March 28, 1932

Wm. A. Finn and John W. Hackett, Toledo, for plaintiff in error.

W. W. Campbell and Otto L. Hankison, Toledo, for defendant in error.

LLOYD, J.

The date of this occurrence was September 14, 1929, and the time, according to Christian was "between quarter of eight and eight-thirty" in the evening, and according to Garey, 8:55 o'clock. The intersection was brightly lighted. Garey says that he was standing between the two rails of the north track and facing to the south at the time of the impact and that his left hip was struck "either by the fenders or the bumpers" of the automobile. Christian stated that Garey was standing "between the two sets of tracks" to the south side of the street car and that the speed of the automobile was from 30 to 35 miles an hour. He said that no horn was sounded and that the automobile stopped between 10 and 15 feet from where it struck Garey. Garey did not see the approaching automobile before it struck him, nor is there any evidence that he looked for approaching traffic when alighting from the street car or when he reached the switch. After the automobile stopped Garey, assisted by Christian, went to the automobile and talked to the driver, in the presence of Christian, "possibly three or four minutes." The driver of the automobile, whom Garey says was Ottgen, gave his name as T. H. Johnson, Dundee, Michigan. Garey, after leaving the hospital, went to see Johnson, saying to him, in describing the driver of the automobile, that he "had red hair and I would know him if I would see him." He then, in company with a detective, called upon a man in Detroit by the name of Myers, to whom Johnson had directed him, and who had owned an automobile bearing the license number on the car which collided with Garey. Myers said that he had sold it to the Thompson Motor Sales

Company of Detroit and it was learned that this automobile was sold by this Detroit company to The Toledo Used Car & Service Company of Toledo, which is the firm name under which Ottgen is doing business, Ottgen being engaged in buying and selling "used cars." Garey then called upon Ottgen and recognized him as the automobile driver for whom he had been searching. Ottgen testified that from the information given to him by Garey he found from checking his records that he had bought a Cadillac car from the Thompson Motor Sales Company and had resold it in April, 1929 to Mr. Cameron of The Cameron Gas & Oil Company of Toledo. Garey testified that Ottgen said "all licenses come through with the machine" and that Ottgen looked in the basement but could not find the license plates. Ottgen, however, stated that he told Garey that he did not have the license plates and said to him "that we had our dealers' license that we brought this car in on." In his answer to the petition Ottgen denied all of the allegations of the petition of Garey as to the alleged negligence of the driver of the automobile and alleged affirmatively that he was not the driver of the automobile and had no knowledge of the alleged occurrence. No evidence was produced to refute the testimony of Christian and Garey as to the alleged negligence of the driver of the automobile, the only evidence offered by Ottgen being that he was at his home on 20th Street all of the evening of September 14th, 1929 from and after six-thirty o'clock. Several witnesses similarly testified, saying that after dinner, which was served at 6:30, they stayed there from that time on until between 11:00 o'clock and midnight, playing cards, but Christian and Garey testified postively that Ottgen was the driver of the automobile and this court would not be warranted in holding the verdict and judgment to be manifestly against the weight of the evidence.

Ottgen also complains that the trial judge erred in permitting certain sections of an ordinance of the City of Toledo offered by Garey to be received in evidence. The admission in evidence of Sections 29, 33 and 40 thereof was not prejudicial error.

Section 41 of the ordinance reads as follows:

"It shall be unlawful for the owner while occupying a vehicle or the operator of a vehicle to allow or cause such vehicle to be operated at a rate of speed greater than ten miles an hour in the following parts of the City of Toledo:

(a) entering or crossing main thoroughfares;

(f) where safety zones have been marked off with painted lines or designated by standards or stanchions, vehicles may not be operated past or by the same at a speed in excess of five miles per hour."

Section 45 of the ordinance reads as follows:

"Reckless driving within the meaning of this ordinance shall be deemed to include the following offenses, which are hereby prohibited:
Entering or crossing a main thoroughfare while on a main thoroughfare at a speed in excess of ten miles per hour."

There is no evidence in the record that there was a safety zone at the place in question at the time of the occurrence nor any evidence that it was in a business or closely built-up portion of the city of Toledo;; but, in any event, these quoted sections of the ordinance are in conflict with §12603, GC, which fixes the speed at which it is prima facie lawful for the operator of a motor vehicle to drive the same and violative of §12608, GC, which provides that the provisions of §12603, GC, shall not be diminished, restricted or prohibited by an ordinance, rule or regulation of a municipality or other public authority. These two sections, therefore, were improperly and erroneously admitted in evidence and the charge of the court to the effect that a violation of any one of the sections of the ordinances received in evidence was negligence was likewise erroneous.

The remaining section of the ordinance as offered and received in evidence provides only that "all sections of streets on which street cars or electric cars are operated shall be all termed as main thoroughfares." These provisions are consonant with §6310-30, GC, and the admission in evidence of this section was not error.

The more serious question, however, is the charge of the court as to the measure of damages. On this subject the trial judge thus instructed the jury, viz:

"In assessing these damages, the measure of damages, ladies and gentlemen of the jury, is compensation and compensation only, and in that connection, you may take into consideration the nature of the injuries which he has sustained, the pain and suffering that he has been put to, the likelihood that he will suffer in the future from the injuries which he has sustained, that he will be put to further expense, that he will be further incapacitated, if the evidence so shows, in his usual vocation. You will take into consideration all of these matters, all of which of course, have to be established and proven by the plaintiff by a preponderance of the evidence. If you so find and have assessed the damages according to the rule that I am now giving you, then it will be your duty to return a verdict in favor of the plaintiff."

The rule of law adopted by the courts of this state is that "where prospective damages from an injury are claimed, they should be limited by the court in its charge to the jury to such as the evidence shows are reasonably certain to result from the injury."
**Toledo Railways & Light Co. v Frue, 7 Oh Ap, 412;**
**Toledo Railways & Light Co. v Poland, 7 Oh Ap, 397.**
The instruction under consideration in the case first above cited was:

"You may include * * * any amount which you may find from the testimony she is reasonably liable to incur in the future therefor."

The word "likelihood" imports something less than reasonable certainty. The evidence, to warrant a belief in the likelihood of the happening of a future event or condition need not be of that degree of probative value required to conclude that such event or condition is reasonably certain to result. Not even the qualifying "likelihood" was used in relation to "the further expense" and the prospective incapacity to work in his usual vocation. The evidence in the record is not unequivocal as to the future condition, the expense and the capacity of Garey to work at his usual vocation, and this court is of the opinion that the foregoing instruction of the court to the jury as to the measure of damages was erroneous and reversible error.

The following appears in the charge of the court:

"Therefore, if, after a full and fair consideration of all the evidence, you find that the plaintiff has failed to establish, by a preponderance of the evidence, the identity of the defendant in this case as being the person who drove the car which struck the plaintiff at the time and place alleged in plaintiff's petition, or if there is only an equality upon that question in the evidence in this case on either side, then, of course, you will return a verdict for the defendant, and then you need, of course, proceed no further in this lawsuit but immediately bring in your verdict to the court."

To use the phrase "equality in the evidence" is not an apt statement of the law. As said in **Klunk v Railway, 74 Oh St, 125,** "the rule is that he who affirms must prove, and when the whole of the evidence upon the issue involved leaves the case in equipoise, the party affirming must fail."

In other words, if the evidence for and against an issue involved in a case on trial is of equal weight, the burden of proof has not been maintained. Whatever "equality in the evidence" may mean, the weight of the evidence is the measure of value.

The judgment is reversed and the cause remanded for a new trial.

RICHARDS and WILLIAMS, JJ, concur.

WILLIAMS, J, concurring:

The writer concurs in the majority opinion in so far as the charge of the court relating to future damages was erroneous to the prejudice of the plaintiff in error in that it failed to confine the recovery to such damages as were reasonably certain to follow from the injury in the future, but as to the admissibility of the ordinances, while one or more may not have been admissible in evidence, their admission was not prejudicial for the reason that it was the duty of the trial judge, under the peculiar circumstances of the instant case, to tell the jury that the driver of the car which struck Garey was guilty of negligence as a matter of law. The undisputed evidence is that Garey at the time he was struck was in the performance of his duty in turning the switch point and was struck in the left hip by the automobile approaching from behind at a place where artificial light was ample. The defense offered no explanation whatever of the conduct of the automobile driver. In fact, the claim of the defendant was that he was not the driver and was not present. The books are full of instances in which a person has been held guilty of negligence as a matter of law on a much weaker state of facts.