

FILED
Aug 30 2024, 9:10 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Andy D. Boner,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

August 30, 2024

Court of Appeals Case No.
24A-CR-91

Appeal from the Johnson Circuit Court

The Honorable Andrew S. Roesener, Judge

Trial Court Cause No.
41C01-2207-F3-75

---

**Opinion by Judge Tavitas**
Judges Crone and Bradford concur.

**Tavitas, Judge.**

## Case Summary

[1] Andy Boner appeals his two convictions for dealing in methamphetamine, one as a Level 3 felony and the other as a Level 4 felony, and his concurrent sentences totaling six years in the Department of Correction ("DOC"). Boner's convictions stem from two controlled buys executed by law enforcement. Boner argues that: (1) the trial court abused its discretion by admitting evidence regarding the methamphetamine recovered from the first controlled buy; (2) insufficient evidence supports his convictions; (3) his two convictions constitute double jeopardy; and (4) his sentence is inappropriate.

[2] We reject Boner's arguments that the trial court abused its discretion by admitting the challenged evidence and that insufficient evidence supports the convictions. We do, however, find that Boner's convictions constitute double jeopardy, and we remand with instructions that the trial court vacate the Level 4 felony conviction. Lastly, we find that Boner's sentence is not inappropriate. Accordingly, we affirm in part, vacate in part, and remand.

## Issues

[3] Boner raises four issues, which we restate as:

> I. Whether the trial court erred by admitting evidence regarding the methamphetamine recovered from the first controlled buy.
>
> II. Whether sufficient evidence supports Boner's convictions.

III.    Whether Boner's convictions constitute double jeopardy.

IV.    Whether Boner's sentence is inappropriate.

## Facts

[4]    On April 4, 2022, the Johnson County Sheriff's Department, with the assistance of a confidential informant ("C.I."), was planning a controlled buy[1] of methamphetamine from a man named Rob Stone. Prior to departing to the buy location, law enforcement searched the C.I. for illegal drugs and found none. Detective Jason Weinhorst, equipped with a hidden camera, then drove himself and the C.I. to a house in Greenwood. Detective Weinhorst parked his truck in the driveway, and he and the C.I. entered an open garage where Stone and a woman were waiting.

[5]    Boner then entered the garage from inside the residence and handed a baggie with a large amount of methamphetamine to the C.I. The C.I. and Detective Weinhorst explained that they had intended to purchase only $30 worth of methamphetamine and that the baggie contained more methamphetamine than they had cash to purchase; however, Detective Weinhorst offered to "go get

---

[1] "A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband." *Watson v. State*, 839 N.E.2d 1291, 1293 (Ind. Ct. App. 2005).

more cash" and "be right back" to purchase the rest of the methamphetamine, to which the others agreed. State's Ex. 1 at 4:15.

[6] Detective Weinhorst then left the garage to retrieve a scale from his truck, while the C.I. remained in the garage. This took less than thirty seconds. When Detective Weinhorst returned to the garage, the parties weighed out approximately one gram of methamphetamine to purchase with the $30, and the remaining methamphetamine was left in the baggie on the table. Boner watched the C.I. as the latter weighed the methamphetamine. The C.I. paid the $30 to Stone, and the purchased methamphetamine was placed in an amber medicine bottle.

[7] Detective Weinhorst and the C.I. returned to the briefing location, where law enforcement again searched the C.I. and found no illegal drugs on his person. Detective Weinhorst left the medicine bottle with law enforcement and obtained cash to purchase the remaining methamphetamine.

[8] Detective Weinhorst and the C.I., again equipped with a hidden camera, then drove back to the Greenwood house. Boner and Stone were still present in the garage, and Boner discussed selling the remaining methamphetamine for $200, to which Detective Weinhorst agreed. The C.I. weighed the remaining methamphetamine, which was in "the same place and location that it had been left at the end of the first deal." Tr. Vol. II p. 89. Detective Weinhorst paid the $200 to Stone and departed with the C.I. Detective Weinhorst placed the methamphetamine from this second buy in an empty pack of cigarettes.

[9] Detective Weinhorst and the C.I. then returned to the briefing location, where law enforcement searched the C.I. for a third time and found no illegal drugs. Detective Weinhorst retrieved the medicine bottle and packaged and sealed the methamphetamine inside for testing; however, the medicine bottle was not retained as evidence. Detective Weinhorst packaged and sealed the cigarette pack containing the methamphetamine from the second buy for testing separately from the methamphetamine from the first buy. Both samples were marked and placed in the evidence locker.

[10] The State charged Boner with Count I, dealing in methamphetamine in an amount of at least five but less than ten grams, a Level 3 felony, based on the second controlled buy; and Count II, dealing in methamphetamine in an amount of at least one but less than five grams, a Level 4 felony, based on the first controlled buy.

[11] A bench trial commenced in November 2023. Detective Weinhorst testified regarding the two controlled buys, which he described as separate deals. He explained that, during the first controlled buy, Boner brought more methamphetamine than they had previously "agreed upon," so Detective Weinhorst needed to obtain more cash to purchase the rest of the methamphetamine. Tr. Vol. II p. 58. The videos from the two controlled buys were admitted as State's Exhibits 1 and 2.

[12] The Johnson County Sheriff's Department evidence technician testified that he collected two methamphetamine samples from the evidence locker, logged

them in the computer system, and sent them for testing. The State moved to admit State's Exhibit 4, the methamphetamine from the first controlled buy, and State's Exhibit 5, the methamphetamine from the second controlled buy. Boner, however, objected to the admission of Exhibit 4 on the grounds that: (1) Detective Weinhorst was not watching the C.I. while retrieving the scale from the truck; and (2) there was a gap in the chain of custody because the methamphetamine from the first buy was removed from the medicine bottle prior to being packaged for testing, and the medicine bottle was not retained as evidence. The trial court overruled the objection and admitted the evidence.

[13] An Indiana State Police Laboratory forensic scientist then testified regarding the laboratory testing of Exhibits 4 and 5. Boner objected to this testimony on the grounds that Boner could have provided "an inert, non-controlled substance" during the first controlled buy, which could have been contaminated by illegal drugs possibly present in the medicine bottle. The trial court overruled this objection. The forensic scientist then testified that Exhibit 4 tested as 1.12 grams of methamphetamine and Exhibit 5 tested as 6.39 grams of methamphetamine; her report indicating the testing results was admitted as State's Exhibit 6 without objection from Boner. Boner stipulated that the evidence was properly handled after it arrived at the lab.

[14] The State then recalled Detective Weinhorst as a witness to testify regarding the medicine bottle in which the methamphetamine from the first controlled buy was placed. Detective Weinhorst testified that law enforcement commonly places illegal drugs purchased in controlled buys in such bottles and that,

although he did not know if the bottle was new or cleaned prior to using the bottle, he checked to make sure it was empty before bringing it with him to the first buy. He further testified that the bottle was in the same condition when he retrieved it after the second buy as it was when he left it after the first buy. The trial court found Boner guilty as charged.

[15] The trial court held a bifurcated sentencing hearing on December 11 and 14, 2023. Boner testified that he abused substances after his wife died, that he has two minor children, and that he has several health problems. He further testified that he was accepted into the Chain Breakers substance abuse treatment program but had to leave due to "health issues and family issues that [he] would rather not discuss with the court." Tr. Vol. II p. 143. The Chain Breakers program, however, was willing to allow Boner to return in the future. Boner's father testified that Boner could stay with him while seeking substance abuse treatment, and a family friend spoke positively about Boner's character. Boner's counsel argued that entering judgments of conviction on both offenses would constitute double jeopardy because the two controlled buys were "all one continuous transaction . . . ." *Id.* at 159.

[16] The trial court found one aggravator—Boner's criminal history, which included Class A misdemeanor convictions for conversion in 2004 and criminal trespass in 2016. Boner's history also includes a Class C infraction for driving without a license in possession. The trial court found three mitigators: Boner's pretrial behavior, undue hardship to his children, and his health problems. The trial court rejected Boner's double jeopardy argument, finding that the issue was

controlled by *Powell v. State*, 151 N.E.3d 256 (Ind. 2020). The trial court, thus, entered judgments of conviction on both offenses and sentenced Boner to concurrent sentences of six years on Count I and three years on Count II, all executed in the DOC. Boner now appeals.

## Discussion and Decision

### I. Admission of Evidence—Abuse of Discretion

[17] We first address Boner's argument that the trial court erred by admitting, over his chain of custody objection: (1) Exhibit 4, the methamphetamine recovered from the first controlled buy; and (2) the forensic scientist's testimony that Exhibit 4 consisted of 1.12 grams of methamphetamine. We are not persuaded by these arguments.

[18] We review challenges to the admission of evidence for an abuse of the trial court's discretion. *Combs v. State*, 168 N.E.3d 985, 990 (Ind. 2021). We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). The erroneous admission of evidence, however, may be harmless if that evidence is cumulative of other evidence admitted. *Pelissier v. State*, 122 N.E.3d 983, 988 (Ind. Ct. App. 2019), *trans. denied*.

[19] Boner argues that the methamphetamine recovered from the first controlled buy and the forensic scientist's testimony regarding the same should have been

excluded because the State failed to properly establish the chain of custody. Discussing chain of custody, this Court has explained:

> An exhibit is admissible "if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times." *Culver v. State*, 727 N.E.2d 1062, 1067 (Ind. 2000). The State must give "reasonable assurances that the property passed through various hands in an undisturbed condition." *Id.* The State need not establish a perfect chain of custody, and any gaps in the chain go to the weight of the evidence and not to its admissibility. *Id.* There is a presumption of regularity in the handling of exhibits by public officers. *Id.* Merely raising the possibility of tampering is insufficient to make a successful challenge to the chain of custody. *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002).

*Jones v. State*, 218 N.E.3d 3, 9 (Ind. Ct. App. 2023), *trans. denied*. For fungible items, "whose appearance is indistinguishable to the naked eye," the State bears a "higher burden" to establish the chain of custody. *Id*. Drugs are often considered fungible items. *See*, *e.g.*, *Mateo v. State*, 981 N.E.2d 59, 66 (Ind. Ct. App. 2012), *trans. denied*.

[20] Here, Detective Weinhorst testified that he placed the substance recovered from the first buy in a medicine bottle, and he had previously checked to ensure that the bottle was empty. Detective Weinhorst left the bottle at the briefing location and found it in the same condition when he returned from the second buy later that day. Detective Weinhorst then transferred the substance from the bottle to a package for testing. Testing revealed the substance to be 1.12 grams

of methamphetamine. The bottle, however, was not tested or retained as evidence.

[21] Boner argues that the bottle could have contained illegal drugs, which could have contaminated the substance obtained from the first controlled buy. He relies on *Zimmerman v. State*, 469 N.E.2d 11, 18 (Ind. Ct. App. 1984). In that case, the defendant challenged the admission of evidence regarding a blood test. The defendant argued that the State failed to prove that the container into which the blood sample was placed was "sterile" and that the container "*could* have been contaminated at some time, which would have rendered the results of the blood test unreliable and, therefore, inadmissible." *Id*. (emphasis in original). This Court rejected that argument because the defendant "presented absolutely no evidence that the container actually was contaminated." *Id*. The Court also noted that a chemist for the State laboratory testified that it was "his procedure to use containers prepared to be sterile by the manufacturer" and that the evidence overall "'strongly suggest[ed] the whereabouts of the evidence at all times.'" *Id*. at 18-19 (quoting *Jones v. State*, 425 N.E.2d 128, 132 (Ind. 1981)). In the end, the defendant failed to raise more than a "mere possibility that evidence might have been tampered with . . . ." *Id*. at 18.

[22] Here, as in *Zimmerman*, Boner has not raised more than a mere possibility that the medicine bottle was contaminated. Although the bottle was not offered into evidence, Boner presented no evidence that the bottle was contaminated, and the evidence tends to show that it was not. Moreover, any faults in the chain of

custody here would go only to the weight of the evidence, not its admissibility. *Jones*, 218 N.E.3d at 9. Accordingly, the trial court did not abuse its discretion by admitting the challenged evidence.[2]

## II. Sufficiency of the Evidence

[23] We next address Boner's argument that insufficient evidence supports his convictions. We conclude that the evidence is sufficient. Sufficiency of evidence claims "warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility." *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020) (citing *Perry v. State*, 638 N.E.2d 1236, 1242 (Ind. 1994)). We consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence. *Powell*, 151 N.E.3d at 262 (citing *Brantley v. State*, 91 N.E.3d 566, 570 (Ind. 2018)). We affirm the conviction "'unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" *Sutton v. State*, 167 N.E.3d 800, 801 (Ind. Ct. App. 2021) (quoting *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007)).

---

[2] Moreover, Boner did not object to the admission of the forensic chemist's report, which indicated that the substance recovered from the first buy tested as 1.12 grams of methamphetamine. The report was essentially the same as the forensic chemist's testimony, so any error in the admission of the challenged evidence would be harmless. *Pelissier*, 122 N.E.3d at 988.

[24] Boner was convicted of two counts of dealing in methamphetamine, one as a Level 3 felony and one as a Level 4 felony, under Indiana Code Section 35-48-4-1.1. This statute provides, in relevant part:

(a) A person who:

(1) knowingly or intentionally:

(A) delivers; or

(B) finances the delivery of;

methamphetamine, pure or adulterated; or

(2) possesses, with intent to:

(A) deliver; or

(B) finance the delivery of;

methamphetamine, pure or adulterated;

commits dealing in methamphetamine, a Level 5 felony, except as provided in subsections (b) through (e).

* * * * *

(c) The offense is a Level 4 felony if:

(1) the amount of the drug involved is at least one (1) gram but less than five (5) grams[.]

* * * * *

> (d) The offense is a Level 3 felony if:
>
>> (1) the amount of the drug involved is at least five (5) grams but less than ten (10) grams . . . .

"Delivery" is defined as: "(1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)." Ind. Code § 35-48-1-11.

[25] Here, Detective Weinhorst and the C.I. originally arranged to purchase $30 worth of methamphetamine from Stone. Boner, however, participated in the arrangement by providing the methamphetamine and watching as the methamphetamine was weighed. And when Detective Weinhorst and the C.I. returned for the second buy, Boner was still present in the garage and discussed the pricing for the remainder of the methamphetamine.

[26] Boner argues that the evidence is insufficient to support his convictions because the controlled buys "constituted just one transaction with 2 separate installments." Appellant's Br. p. 15. Indiana Code 35-48-4-1.1(a)(1)(A), however, provides that a person, acting with the requisite mens rea, commits dealing in methamphetamine if the person "delivers" methamphetamine. There were two deliveries of methamphetamine here.

[27]     Boner also argues: (1) the money was handed to Stone in both controlled buys; (2) Detective Weinhorst was not supervising the C.I. while retrieving the scale; and (3) the medicine bottle could have been contaminated before the first controlled buy.  These arguments merely request that we reweigh the evidence, which we cannot do.  Moreover, Detective Weinhorst left the C.I. for only a matter of seconds; there was no evidence that the C.I. tampered with the evidence; Detective Weinhorst testified that the medicine bottle was empty before he used it; and the substance obtained from the first buy originated from the same bag as the substance from the second buy.  Boner does not challenge that the second substance was methamphetamine.

[28]     Lastly, Boner relies on *Watson v. State*, 839 N.E.2d 1291 (Ind. Ct. App. 2005), to suggest that the C.I. could have tampered with the evidence here.  In *Watson*, law enforcement attempted to execute a controlled buy; a C.I. entered the defendant's vehicle to purchase cocaine and exited the vehicle with cocaine in her pocket.  *Id*. at 1292.  The C.I., however, had not been searched prior to the buy.  *Id*. at 1293.  Although the defendant was found guilty of dealing in cocaine at trial, on appeal, a panel of this Court found the evidence insufficient because the C.I. was neither searched prior to the buy nor testified at trial.  *Id*. at 1294.  Unlike *Watson*, however, the C.I. here was searched before and after both controlled buys, and no illegal drugs were found on his person.  The evidence is sufficient to support Boner's two convictions.

## III. Double Jeopardy

[29] Boner next argues that his two convictions constitute double jeopardy. We review double jeopardy claims de novo. *See Wadle v. State*, 151 N.E.3d at 237; *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020). We conclude that Boner's convictions here constitute double jeopardy, and we remand with instructions that the trial court vacate Boner's Level 4 felony conviction.

### A. *Wadle*, not *Powell*, governs the double jeopardy analysis in this case.

[30] As an initial matter, our Supreme Court has delineated two varieties of substantive double jeopardy[3] claims: "(1) when a single criminal act or transaction violates a single statute but harms multiple victims, and (2) when a single criminal act or transaction violates multiple statutes with common elements and harms one or more victims."[4] *Wadle*, 151 N.E.3d at 247. The test set forth in *Powell* governs the former scenario whereas the test set forth in *Wadle* governs the latter.

[31] Here, at the second sentencing hearing, the trial court found *Powell* to be the governing test for Boner's double jeopardy claim because Boner's convictions fell under a "single statute." Tr. Vol. II p. 165. Although Boner's dealing

---

[3] Substantive double jeopardy refers to the prohibition against "multiple convictions or punishments for the same offense in a single trial." *Wadle*, 151 N.E.3d at 235. This type of double jeopardy is distinct from procedural double jeopardy, which refers to the prohibition against "subsequent prosecution for the same offense, whether after acquittal or conviction." *Id*.

[4] Our Supreme Court has also phrased this distinction as: "(1) when a single criminal act or transaction violates multiple statutes with common elements, or (2) when a single criminal act or transaction violates a single statute and results in multiple injuries." *Powell*, 151 N.E.3d at 263.

offenses here do fall under the same statute, Indiana Code Section 35-48-4-1.1, Count I, the Level 3 felony, draws from subsection (c)(1), which sets forth the crime for dealing in methamphetamine in an amount greater than five but less than ten grams, whereas Count II, the Level 4 felony, draws from subsection (d)(1), which sets forth the crime for dealing in methamphetamine in an amount greater than one but less than five grams. In other words, the two convictions "fall under separate statutory provisions, each defining a separate crime." *Koziski v. State*, 172 N.E.3d 338, 342 (Ind. Ct. App. 2021), *trans. denied*.

[32] Under these circumstances, this Court has held that *Wadle*, not *Powell*, governs our double jeopardy analysis. *See Carranza v. State*, 184 N.E.3d 712, 715 (Ind. Ct. App. 2022) (holding that *Wadle*, not *Powell*, governed double jeopardy analysis of convictions for child molesting as a Level 1 felony, and child molesting as a Level 4 felony, both of which drew from separate subsections of the child molesting statute, each of which criminalized different conduct); *accord Koziski*, 172 N.E.3d at 342; *Stone v. State*, 226 N.E.3d 829, 833 (Ind. Ct. App. 2024), *trans. denied*.

## B. Boner's convictions constitute double jeopardy.

[33] Having concluded that *Wadle* is the applicable test, we conclude that Boner's convictions constitute double jeopardy. We analyze *Wadle*'s three-part test below.

### 1. Step One—Whether multiple punishment is permitted

[34] Under *Wadle* step one, we ask whether "the language of either statute clearly permits multiple punishment, whether expressly or by unmistakable implication." *Wadle*, 151 N.E.3d at 248. If that is the case, "the court's inquiry comes to an end and there is no violation of substantive double jeopardy." *Id*. Here, we are dealing with only one statute, Indiana Code Section 35-48-4-1.1, and two subsections thereunder. Nothing in this statute clearly permits multiple punishment. We, therefore, proceed to *Wadle* step two.

### 2. Step Two—Whether the offenses are "included"

[35] Under *Wadle* step two, we determine whether the two offenses for which the defendant was convicted constitute "included" offenses. *See id*. Included offenses come in two varieties. The first are "inherently" included offenses, which refers to offenses that meet either of the three definitions for "included offense" under Indiana Code Section 35-31.5-2-168. *A.W. v. State*, 229 N.E.3d 1060, 1067 (Ind. 2024). This statute provides:

> "Included offense" means an offense that:
>
> > (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
> >
> > (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

[36] The other variety of included offenses are offenses that are included "as charged," also known as "factually included" offenses. *See A.W.*, 229 N.E.3d at 1067 (noting that "[t]hese two concepts—as charged and factually included—should be treated as synonymous under *Wadle*"). Offenses are included as charged when "the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Id.*

[37] Boner argues that his convictions are factually included "based on evidence produced at trial." Appellant's Br. p. 19. Our Supreme Court has recently clarified, however, that "when assessing whether an offense is factually included, a court may examine only the facts as presented on the face of the charging instrument"; we may not "probe other facts, such as evidence adduced from trial." *A.W.*, 229 N.E.3d at 1067. Because Boner relies on facts adduced at trial rather than those alleged in the charging information, we cannot conclude that the offenses here are factually included.

[38] Boner makes no argument that his offenses constitute inherently included offenses, however, we address this issue sua sponte. *See, e.g.*, *Banks v. State*, 231 N.E.3d 853, 867 (Ind. Ct. App. 2024) (noting that appellate courts "can raise double-jeopardy issues sua sponte") (citing *Koziski*, 172 N.E.3d at 341), *trans.*

*denied*. At first blush, because one of Boner's convictions consists of dealing in a lesser amount of methamphetamine than the other conviction, the former offense appears to be a lesser included offense of the other. Under the *Wadle* test, however, offenses are inherently included only if they meet one of the three definitions of "included offense" under Indiana Code Section 35-31.5-2-168.

[39] We conclude that the offenses are inherently included under Indiana Code Section 35-31.5-2-168(3). The two offenses share the same elements; the only difference is that the Level 3 felony offense requires dealing in a greater amount of methamphetamine than the Level 4 felony offense. The offenses, thus, differ only in that the Level 4 felony involves a "less serious harm or risk of harm to the same person, property, or public interest." Ind. Code § 35-31.5-2-168(3); *cf. A.W.*, 229 N.E.3d at 1072 (holding that, where juvenile was adjudicated delinquent for acts that would be dangerous possession of a firearm, a Class A misdemeanor if committed by an adult, and possession of a machine gun, a Level 5 felony if committed by an adult, the two adjudications were "included" for the purposes of *Wadle* because "being a juvenile in possession [of a firearm] is 'a less serious harm . . . to the . . . public interest' than possession of a machine gun" (quoting Ind. Code § 35-31.5-2-168(3)); *Hendricks v. State*, 162 N.E.3d 1123, 1139 (Ind. Ct. App. 2021) (holding that, where defendant was convicted of conspiracy to commit robbery and felony murder based on the robbery, the conspiracy offense "could be" an included offense of the felony murder offense because, under the facts of the case, the offenses "differ[ed] only in the respect that a less serious harm to" the victim was required to establish

the conspiracy offense), *trans. denied*. Because we conclude that the offenses here are inherently included, we proceed to *Wadle*'s third and final step.

### 3. *Step Three—Whether the offenses constitute a single transaction*

[40] Under *Wadle* step three, we examine the facts underlying the offenses, "as presented in the charging instrument and as adduced at trial." *Wadle*, 151 N.E.3d at 249. "Based on this information, a court must ask whether the defendant's actions were so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id*. If the defendant's acts constitute a single transaction, the multiple convictions constitute double jeopardy.

[41] As we explained in the sufficiency of evidence section, the controlled buys here involved two deliveries of methamphetamine. Under the language of the statute, thus, sufficient evidence supports the two convictions. As a matter of double jeopardy, however, we conclude that the totality of the circumstances indicate that the events here formed part of the same, singular transaction under the *Wadle* analysis.

[42] First, we agree with Boner that "[t]here was a singleness of purpose" to purchase all of the methamphetamine, and "there would have been a single payment if Weinhorst and the [C.I.] had the money" during the first buy. Appellant's Br. p. 20. Although Detective Weinhorst originally arranged for the purchase of only $30 worth of methamphetamine, the parties agreed that Detective Weinhorst would return with more cash to purchase the remainder of

the methamphetamine. Second, both controlled buys occurred in the same location—the garage of the Greenwood residence. Finally, although the amount of time that passed between the two controlled buys is unclear, the State concedes that the second controlled buy "occurred on the same day within a short amount of time" as the first. Appellee's Br. p. 29.[5]

[43] Based on the circumstances here, we conclude that the two convictions both derived from the same transaction, as defined by *Wadle*, and, therefore, constitute double jeopardy. We, accordingly, remand with instructions that the trial court vacate Boner's conviction for the Level 4 felony conviction.

## IV. Inappropriate Sentence

[44] Lastly, Boner argues that his sentence of six years in the DOC is inappropriate. Although we order that one of Boner's convictions be vacated due to double jeopardy principles, his sentences were ordered to be served concurrently, so the length of his sentence remains six years. We conclude that Boner's six-year sentence is not inappropriate.

[45] The Indiana Constitution authorizes independent appellate review and revision of sentences imposed by a trial court. *Lane v. State*, 232 N.E.3d 119, 122 (Ind. 2024) (citing Ind. Const. art. 7, §§ 4, 6). This authority, as implemented

---

[5] We note that the timestamps on the video exhibits show that the first buy commenced at approximately "14:51" and the second buy commenced at approximately "15:16." There was, however, no testimony at trial regarding these timestamps or the amount of time that passed between the two buys.

through Appellate Rule 7(B), enables this Court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Deference to the trial court's sentence should prevail unless "overcome by compelling evidence portraying in a positive light the nature of the offense and the defendant's character." *Oberhansley v. State*, 208 N.E.3d 1261, 1267 (Ind. 2023) (internal quotations omitted). A defendant, however, need not show that both the nature of the offense and his or her character warrant revision; rather, "a strong showing on one prong" may "outweigh a weak showing" on the other prong. *Lane*, 232 N.E.3d at 127.

[46] Additionally, in determining whether a sentence is inappropriate, we are not limited to the aggravating and mitigating circumstances found by the trial court. *Oberhansley*, 208 N.E.3d at 1271. "Our role is primarily to leaven the outliers and identify guiding principles for sentencers, rather than to achieve the perceived correct result in each case." *Lane*, 232 N.E.3d at 122 (internal quotations omitted). "Ultimately, we rely on our collective judgment as to the balance of all the relevant considerations involved, which include the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* (internal quotations omitted).

[47] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the

crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). In the case at bar, Boner was convicted of dealing in methamphetamine, a Level 3 felony, and we have ordered that his other conviction be vacated. Pursuant to Indiana Code Section 35-50-2-5(b), a person who commits a Level 3 felony "shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with the advisory sentence being nine (9) years." Boner was sentenced to six years, below the advisory sentence, in the DOC.

**Nature of the Offense**

[48] Our analysis of the "nature of the offense" requires us to look at the extent, brutality, and heinousness of the offense. *See Wilson v. State*, 157 N.E.3d 1163, 1182 (Ind. 2020). Here, Boner ultimately participated in the sale of over $200 worth of methamphetamine. Boner merely restates his argument that the evidence was insufficient to support his convictions, and we have vacated one of his convictions on double jeopardy grounds. We discern nothing about the nature of the offense that warrants revision of Boner's sentence.

**Character of the Offender**

[49] Our analysis of the character of the offender involves a broad consideration of a defendant's qualities, including the defendant's age, criminal history, background, past rehabilitative efforts, and remorse. *See Harris v. State*, 165 N.E.3d 91, 100 (Ind. 2021); *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020). The significance of a criminal history in assessing a defendant's character and an appropriate sentence vary based on the "gravity, nature and number of prior

offenses as they relate to the current offense." *McElfresh v. State*, 51 N.E.3d 103, 112 (Ind. 2016). "Even a minor criminal history is a poor reflection of a defendant's character." *Prince v. State*, 148 N.E.3d 1171, 1174 (Ind. Ct. App. 2020).

[50] Here, Boner has a criminal history involving two Class A misdemeanor convictions. He was also previously charged with a Class C misdemeanor for operating without a license in his possession, but he pleaded guilty to this offense as a Class C infraction. Although not particularly extensive, this criminal history still reflects poorly on Boner. Boner argues that he has health problems, two minor children, a work history, and family support and that he turned to substance abuse after losing family members. The trial court sufficiently accounted for these circumstances by sentencing Boner below the advisory level. We are not persuaded that Boner's character warrants revision of his sentence.

## Placement in the DOC

[51] Lastly, Boner challenges the placement of his sentence in the DOC. He asks that we revise his sentence to probation so that he can participate in the Chain Breakers program or that he be allowed to execute his sentence on house arrest.

[52] Our courts have recognized that "[t]he place that a sentence is to be served is an appropriate focus for application of our review and revise authority" under Appellate Rule 7(B). *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007) (quoting *Hole v. State*, 851 N.E.2d 302, 304 n.4 (Ind. 2006)). "Nonetheless, we

note that it will be quite difficult for a defendant to prevail on a claim that the placement of his or her sentence is inappropriate. As a practical matter, trial courts know the feasibility of alternative placements in particular counties or communities." *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). "Additionally, the question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. A defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate." *Id.* at 344.

[53] Here, Boner did not explain why he left the Chain Breaker's program the first time, so we are unable to discern whether he would be successful in this program this time around. Additionally, as we have explained, Boner has a criminal history, and his sentence is below the advisory level. We are not persuaded that placement in the DOC is inappropriate under these circumstances.

## Conclusion

[54] The trial court did not err by admitting evidence regarding the methamphetamine obtained from the first controlled buy, and sufficient evidence supports Boner's convictions. Boner's convictions, however, constitute double jeopardy, so we remand with instructions that the trial court vacate the Level 4 felony conviction. Lastly, Boner's six-year sentence is not inappropriate.

[55] Affirmed in part, vacated in part, and remanded.

Crone, J., and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Carrillo Law LLC
Greenwood, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Kathy Bradley
Deputy Attorney General
Indianapolis, Indiana